(74 App. Div. 106.)

## TURNER v. PABST BREWING CO. OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.   July 1, 1902.)

1. EXCHANGE OF PROPERTY—CONSIDERATION—INADEQUACY—RESCISSION.

An exchange of property worth $2,500 for other property of no value will be set aside for the gross inadequacy of the consideration, though not induced by any act of fraud.

Appeal from special term, Kings county.

Suit by Elizabeth Turner against the Pabst Brewing Company of New York and another to rescind a contract.   From a judgment for plaintiff, defendants appeal.   Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

A. S. Gilbert, for appellants.

William McArthur, for respondent.

GOODRICH, P. J.   The plaintiff asks the court to rescind a contract for the exchange of her house and land at Bensonhurst for a saloon and fixtures owned by the defendant brewing company.   Turner, the plaintiff's husband, previously to Saturday, June 29, 1901, had been negotiating for the purchase of the saloon with one Strauss, its then owner.   On that day he called at the office of the brewing company to make inquiries as to the business, and was told by the defendant Schleip, manager of the company, that Strauss had been put out, and that all negotiations in regard to the matter must be had with the company.   Turner told Schleip that he wanted to exchange the house for the saloon.   Schleip told him that the place stood him in $5,500, that it was doing a prosperous business, and took in from $40 to $60 per day.   After some conversation, Turner was told that, if he did not take it that morning, two or three others stood ready to take it.   The result was that on Monday following, July 1st, the exchange was made.   Turner produced a deed of the Bensonhurst property from the plaintiff to Schleip, and executed a chattel mortgage to the company on the saloon fixtures for $3,000, payable by him on demand.   There were some other details of the transaction, as to price and the license, which are immaterial to our discussion.   Turner went into possession of the saloon the same night, and remained there for 12 days, during which time the gross receipts of the business were $134.95, while the running expenses amounted to $137.92.   Turner surrendered the premises to the company and abandoned the business, and the company took possession and foreclosed the chattel mortgage, and thus resumed its ownership.   The result of the transaction was that the plaintiff parted with her house, in which there was an equity of about $2,500, for a saloon business of no value, and fixtures which were not worth the amount of the mortgage.   The court found, as matter of fact, that the saloon was a helplessly losing concern, without good will, and, with the chattels, was not merely of the value of the plaintiff's equity in her premises; that the consideration paid by the company

¶ 1. See Exchange of Property, vol. 21, Cent. Dig. § 5.

was grossly inadequate; that the defendants misrepresented the value of the saloon and chattels; that the plaintiff's husband was unaware of the falsity of such misrepresentations, and relied upon them in making the contract of exchange. The court found, as conclusion of law: "(1) That the exchange of the said Bensonhurst property for the said saloon and its contents be rescinded and canceled and annulled, for misrepresentations, and on the ground that such exchange is unconscionable, as against the plaintiff, and ought to be rescinded,"—and adjudged, among other things, the cancellation of the mortgage, the return of the plaintiff's deed, and the execution of a quitclaim deed by Schleip to her. The company and its manager appeal from the judgment.

There was abundant evidence to justify the findings of fact, and we are called upon to say whether they authorize the interposition of a court of equity. In Osgood v. Franklin, 2 Johns. Ch. 1, 7 Am. Dec. 513, decided in 1816, Chancellor Kent says (page 22, 2 Johns. Ch., and page 513, 7 Am. Dec.):

"There is no case where mere inadequacy of price, independent of other circumstances, has been held sufficient to set aside a sale made between parties standing on equal ground, and dealing with each other without any imposition or oppression. And the inequality amounting to fraud must be so strong and manifest as to shock the conscience, and confound the judgment of any man of common sense,"—citing Sir Th. Clarke in How v. Weldon, 2 Ves. Sr. 516; Lord Thurlow in 1 Bro. 9; Lord Chief Baron Eyre, in 2 Bro. 179, note; Lord Eldon in 9 Ves. 246; Sir William Grant in 16 Ves. 517

Judge Story, in his Equity Jurisprudence (volume 1 [13th Ed.] § 245), says:

"Inadequacy of consideration is not then, of itself, a distinct principle of relief in equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense knows no such principle. The value of a thing is what it will produce, and it admits of no precise standard."

In the note he quotes Vice Chancellor Wigram's remark upon the same subject in Borell v. Dann, 2 Hare, 440, 450:

"The only exception which I believe can be stated is where the inadequacy of consideration is so gross as of itself to prove fraud or imposition on the part of the purchaser. Fraud in the purchaser is of the essence of the objection to the contract in such a case."

In section 246 Judge Story continues:

"Still, however, there may be such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition or some undue influence, and in such cases courts of equity ought to interfere upon the satisfactory ground of fraud. But then such unconscionableness or such inadequacy should be made out as would (to use an expressive phrase) shock the conscience, and amount in itself to conclusive and decisive evidence of fraud. And where there are other ingredients in the case of a suspicious nature, or peculiar relations between the parties, gross inadequacy of price must necessarily furnish the most vehement presumption of fraud."

Among the grounds of fraud assigned by Lord Hardwicke in the leading case of Chesterfield v. Janssen, 2 Ves. Sr. 125, 155, as those upon which equity has undoubted jurisdiction to relieve, is where "it may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses and not under delusion would make, on

the one hand, and as no honest and fair man would accept, on the other, which are inequitable and unconscientious bargains; and of such even the common law has taken notice." This language of Lord Hardwicke fits and accurately describes the circumstances and results of the exchange between the parties to the transaction under review. The plaintiff, through her husband, by reliance and action upon the misrepresentations of the defendant Schleip, was induced to enter into a bargain whereby she lost her house, and has no fruits of the exchange. The defendants have all. It is clear from the findings of fact and the conclusions of law that, in the opinion of the learned justice at special term, the evidence in the present case brings it within the rule laid down by the eminent authorities cited, for he found that the consideration was "grossly inadequate, and that in the events that have happened the plaintiff obtained nothing, and is without anything in lieu of her Bensonhurst property." To this finding of fact, it may be observed, no exception has been taken by the defendants. The court adjudged that the contract of exchange be rescinded and annulled for misrepresentations, and on the ground that such exchange was unconscionable. A careful examination of the evidence leads us to the conclusion reached by the learned judge at special term,—that the exchange should be canceled on the ground that it was unconscionable.

For this reason, the judgment should be affirmed, with costs. All concur; BARTLETT, J., in result.